UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| DEREK CHRISTENSEN, | Case No. 3:14-cv-00157-RCJ-VPC |
| Petitioner, | ORDER |
| v. | |
| ISIDRO BACA, et al., | |
| Respondents. | |

This *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 by petitioner Derek Christensen is before the court for final disposition on the merits.

I.    **Procedural History & Background**

Christensen was charged by way of information with one count of sexual assault on a child and one count of lewdness with a child under age fourteen.  Exhibit 3. [1]  On June 4, 2008, Christensen pled guilty to two counts of lewdness with a child under the age of fourteen.  Exh. 5.  On August 20, 2008, the state district court sentenced Christensen to two consecutive terms of life with the possibility of parole after ten years, and entered the judgment of conviction.  Exhs. 10, 11.  On August 5, 2009, the Nevada Supreme Court affirmed the convictions, and remittitur issued on September 1, 2009.  Exhs. 24, 25.

On March 30, 2010, Christensen filed a proper person motion to withdraw guilty plea or state habeas petition in state district court; he supplemented the petition on

---

[1] Exhibits referenced in this order are exhibits to respondents' motion to dismiss, ECF NO. 13, and are found at ECF Nos. 14-16, 18.

March 17, 2010.  Exhs. 26, 27, 39.  The state district court granted the State's motion to dismiss the petition and supplemental petition on August 1, 2011.  Exh. 49.  On June 13, 2012, the Nevada Supreme Court affirmed in part and reversed in part, remanding the matter for an evidentiary hearing on Christensen's claim that his plea was not knowing, voluntary and intelligent because he was unaware that he was ineligible for probation.  Exh. 66.  Remittitur issued on July 10, 2012.  Exh. 67.

On October 12, 2012, petitioner dispatched his first federal habeas petition. Case No. 3:12-cv-0477-RCJ-VPC at ECF No. 5.  The court dismissed the petition as wholly unexhausted.  *Id.* at ECF No. 9.

On December 13, 2012, the state district court conducted an evidentiary hearing on the remanded state postconviction claim.  Exh. 69.  On January 4, 2013, the state district court issued an order dismissing the petition and supplemental petition.  Exh. 70. The Nevada Supreme Court affirmed the dismissal of the remaining ground on January 16, 2014, and remittitur issued on February 19, 2014.  Exhs. 82, 83.

Christensen dispatched this federal petition for writ of habeas corpus on or about March 21, 2014 (ECF No. 7).  He filed a first-amended petition on September 8, 2014 (ECF No. 9).  This court granted respondents' motion to dismiss in part and dismissed ground 3 as duplicative (ECF No. 25).  Respondents have now answered the remaining grounds, and Christensen has replied (ECF Nos. 26, 27).

II.    **Legal Standard under the Antiterrorism and Effective Death Penalty Act (AEDPA)**

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

2

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002).  This court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86 (2011).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*  (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1398 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413).  The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable.  *Id.* (quoting *Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to federal law, this court looks to the state courts' last reasoned decision.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). Further, "a determination of a factual issue made by a state court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

III.   **Instant Petition**

**Ground 1**

Christensen argues that the victim's statement at sentencing violated his Fifth and Fourteenth Amendment due process rights because the court failed to swear in the victim prior to her statement (ECF No. 9, p. 3).

Respondents contend that no clearly established U.S. Supreme Court law governs the use of victim impact statements in non-capital sentencing hearings.  *See, e.g., Payne v. Tennessee*, 501 U.S. 808 (1991).  Moreover, the Ninth Circuit has explained that, with respect to the effect that victim impact statements might have on a jury, the concern is not the same when a judge does the sentencing.  *Rhoades v. Henry*, 638 F.3d 1027, 1055 (9th Cir. 2010) ("We assume that the trial judge applied the law . . . and considered only evidence that he knew was admissible.").  *See also Landrigan v. Stewart*, 272 F.3d 1221, 1230 (9th Cir. 2001); *Smith v. Stewart*, 140 F.3d 1263, 1272 (9th Cir. 1998) (rejecting a similar argument because the judge can "separate the wheat from the chaff").

4

In its order affirming Christensen's convictions, the Nevada Supreme Court concluded that the state district court erred by not swearing in the victim before she testified. Exh. 24, p. 2. However, the state supreme court determined that the error was harmless because "there is no indication that the district court based its sentencing decision on that unsworn impact statement. *Id.*

The victim testified at sentencing that when Christensen touched her she felt uncomfortable and scared and did not know what to do. Exh. 10, p. 19. She stated she felt ashamed, wanted to be alone all the time, and started fighting with her mother. She stated that she hoped Christensen received the maximum sentence. *Id.* at 20-21.

This court observes that the victim's impact statement at the sentencing hearing was brief. The state district court explained the rationale for its sentencing decision at length, discussing rehabilitation, incapacitation, retribution, and deterrence. *Id.* at 25-30. Christensen has not pointed to anything in the record to show that the court based its sentencing determination on the victim's impact statement. This court concludes that Christensen has not met his burden in demonstrating that demonstrate that the Nevada Supreme Court's decision on federal ground 1 was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Accordingly, federal habeas relief is denied as to ground 1.

### Ground 2

Christensen contends that the impact statement made by the victim's mother violated his Fifth and Fourteenth due process rights because the mother stated that she had heard a rumor that Christensen also engaged in inappropriate conduct with another young girl and because she referred to the possibility of future bad acts by Christensen (ECF No. 9, pp. 5-7).

On direct appeal, the Nevada Supreme Court agreed again that it was error that the victim's mother was not sworn, but concluded that the error was harmless because the sentencing judge specifically stated that he was not relying on the statement in imposing the sentence. Exh. 24, p. 3.

Christensen's counsel objected at the sentencing hearing to the victim's mother's reference to hearing a rumor that Christensen was "doing stuff to my daughter and another young girl over at their house." Exh. 10, pp. 15-16. The court overruled the objection. The mother expressed concern that Christensen would commit similar acts in the future and stated that she hoped he received the maximum sentence. *Id.* at 16-17. The prosecutor asked the court not to consider the mother's reference to rumored other bad acts, noting that the State had put on no evidence of any other acts or that any other children were involved. *Id.* at 24-25. The court clarified: "For the record, this Court is not considering the statements made by the victim's mother with respect to any other acts, but is focusing as this Court can only do, on the defendant before it, the type of crime and the victim in this case." *Id.* at 27-28.

Again, as discussed with the victim's impact statement, the state district court explained the basis of its sentencing determination in detail and, further, expressly disavowed any consideration of the victim's mother's allusion to other bad acts by Christensen. Christensen has not demonstrated that the Nevada Supreme Court's decision on federal ground 2 was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Federal ground 2 is, therefore, denied.

### Ground 4

Christensen asserts that that state district court relied on improper evidence at sentencing in violation of his Fifth and Fourteenth Amendment due process rights (ECF

No. 9, pp. 11-13).  He argues that the prosecutor made several unsupported statements: (1) that this was not an isolated incident but a full-blown affair with a ten-year-old girl over a period of six months; (2) that he pushed the victim down when he wanted to have sex with her; and (3) that he repeatedly referred to the girl by a vulgar name to police.  *Id.*  Christensen claims that these statements influenced the state district court's decision to deviate from the presentence investigation report's recommendation of concurrent terms and to sentence him to consecutive terms.  *Id.*

A sentencing judge has broad discretion to hear a variety of evidence that would normally be inadmissible at trial.  *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1400 (9th Cir. 1989).  However, a sentencing determination based on "'extensively and materially false'" evidence violates due process.  *Id.*, quoting *Townsend v. Burke*, 334 U.S. 736, 741 (1948).  If a court does not base its sentencing determination on the challenged information, "the sentence will be affirmed regardless of the accuracy of the challenged information."  *Oxborrow*, 877 F.2d at 1400 (internal quotations and citations omitted).   If the sentencing court states on the record that it excluded certain information from consideration when making the sentencing decision, the reviewing court must take such statements at face value.  *U.S. v. Gonzales*, 765 F.2d 1393, 1396-97 (9th Cir. 1985).

The Nevada Supreme Court rejected this claim on direct appeal, noting that the district court has wide sentencing discretion, and the state supreme court will refrain from interfering "so long as the record does not demonstrate prejudice resulting from consideration of information or accusations founded on facts supported only by impalpable or highly suspect evidence."  Exh. 24, p. 4 (citations and quotations omitted).  The state supreme court further explained:

> Christensen failed to object to any of the prosecutor's statements and only now contends that they were false.  We therefore review for plain error under NRS 178.602, which requires that the error be plain from a casual inspection of the record and that the error affected the defendant's substantial rights.  *See Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003); *Patterson v. State*, 111 Nev. 1525, 1530, 907 P.2d 984, 987 (1995).  As a result of Christensen's failure to object so that the support for

the prosecutor's comments could be fleshed out in the district court, the record does not reveal that the comments were false or based on impalpable or highly suspect evidence.  Moreover, Christensen has not demonstrated that his substantial rights were affected given the district court's broad discretion to impose consecutive or concurrent sentences.  *See* NRS 176.035(1); *Warden v. Peters*, 83 Nev. 298, 302-03, 429P.2d 549, 552 (1967).  Because Christenson has not demonstrated plain error in the district court's consideration of the prosecutor's comments, we conclude that a new sentencing hearing is not warranted based on this claim.

> *Id.* at 4-5.

At sentencing, the court noted some discrepancy between Christensen's and the victim's versions of events: "This may have been either in the defendant's statement a few isolated events, or in the victim's and in the police investigation, a series of conduct over six months," though the court then observed that "the impact upon the victim is just as devastating."  *Id.* at 28.  The court then sentenced Christensen to two consecutive terms of life with the possibility of parole after ten years.  *Id.* at 29.

Christensen failed to object to the evidence proffered at sentencing.  Moreover, he argues that (1) sexual conduct "four to five times" does not constitute a "full blown affair;" (2) the presentence investigation report and the victim impact statements did not state he pushed the victim down; and (3) he only referred to the victim as a "fucking little bitch" once (ECF No. 9, pp. 11-12).  Thus, he is not arguing that the statements are actually false, nor does he point to any evidence or cite to the state-court record to show that they are materially false or misleading.  Therefore, he has failed to demonstrate that the prosecutor presented materially false or misleading evidence to the court.  Moreover, as discussed above, the sentencing court explained its decision in detail, including pointing out its weighing of significant mitigating factors such as the conclusion of the psycho-sexual evaluation that Christensen posed a low-risk to reoffend and defense counsel's strong argument that this was a first offense.  Exh. 10, pp. 25-29.

Christensen has not demonstrated that the Nevada Supreme Court's decision on federal ground 4 was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an

8

unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).  Federal ground 4 is, therefore, denied.

**Ground 5**

Christensen asserts a violation of his Fifth and Fourteenth Amendment due process rights on the basis that he did not enter his guilty plea knowingly, intelligently and voluntarily because he mistakenly believed probation was an option (ECF No. 9, pp. 15-19).

A guilty plea must be made knowingly, voluntarily and intelligently; such inquiry focuses on whether the defendant was aware of the direct consequences of his plea. *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *see also Brady v. U.S.*, 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.").

In affirming the denial of this ground, the Nevada Supreme Court stated that Christensen's plea counsel testified at the state postconviction evidentiary hearing that he explained to Christensen on multiple occasions before he entered his plea that he was not eligible for probation.  Exh. 82, p. 1.   The state supreme court further reasoned:

> In addition, appellant was informed in the guilty plea agreement, which appellant signed and acknowledged having read, that he was not eligible for probation. Counsel explained at the evidentiary hearing that there was a first draft of the guilty plea agreement which contained incorrect information regarding probation eligibility, but that he did not recall ever showing the incorrect one to appellant and there is no record in his file of his office sending it to appellant.  Counsel testified that the error was corrected in a second draft and the corrected written agreement was shown to appellant prior to the plea.  Appellant signed the corrected written agreement and counsel testified that when they reviewed the corrected written agreement, he again explained to appellant that appellant was not eligible for probation.  The district court concluded that the totality of the circumstances demonstrated that appellant knew he would not be eligible for probation.  Substantial evidence supports that decision.  *State v. Freese*, 116 Nev. 1097, 1105, 13 P.3d 442, 448 (2000); *Little v. Warden*, 117 Nev. 845, 849-51, 34 P.3d 540, 542-44 (2001).

*Id.* at 1-2.

The state-court record reflects the following.  The guilty plea memorandum that Christensen signed on June 4, 2008, and was filed with the court provided that each of the two counts carried a sentence of life with parole eligibility after ten years and that he was not eligible for probation.  Exh. 5, pp. 4-5.  However, during the arraignment, the court canvassed Christensen as follows:

> The Court: Sir, do you understand the maximum penalty that may be imposed in these cases?
>
> Defendant: Yes, sir.
>
> The Court: Tell me as to Count one.
>
> Defendant: Ten to life.
>
> The Court: As to Count Two?
>
> Defendant: Ten to life.
>
> The Court: Is there a fine involved?
>
> District Attorney: No.
>
> The Court: Is probation available?
>
> Defendant: Yes.

Exh. 6, p. 10.

Christensen testified at the evidentiary hearing on his state postconviction petition that when he entered his guilty plea he believed that he was eligible for probation.  Exh. 69, pp. 5-56.  He identified exhibit 1 as the first plea agreement that his counsel showed him; that version of the plea agreement stated that Christensen was eligible for probation.  *Id.* at 6-7.  He testified that he received a copy of a plea agreement the day that he appeared in court to plead guilty.  He said that it was his understanding, at the time he pleaded guilty, that if the psycho-sexual evaluation concluded that he posed a low risk to reoffend that he would be eligible for probation. *Id.* at 7-8.  He stated that defense counsel never showed him the discovery in the case,

any police reports, or any charging documents, and that when he pleaded guilty he had no idea what type of evidence the State had apart from his confession.  *Id.* at 10-12.

Christensen said that on June 4, 2008, when he signed a copy of the plea agreement, he thought it was the same agreement he had reviewed previously and did not read it again.  *Id.* at 24.  The agreement he signed indicated that he was not eligible for probation on either count.  Later during his testimony, Christensen stated instead that he received both versions of the plea agreement at the preliminary hearing stage but did not realize there were two versions.  *Id.* at 25-26.  Christensen was asked: "You're not telling us that [your counsel] told you that you were going to get probation, right, are you?" and he responded: "I'm not saying that."  *Id.* at 30.  He further testified that he did not recall what he told officials who interviewed him for the psychosexual evaluation about whether or not he believed he was going to prison.  *Id.* at 31.  He stated that he quit his job about 90 days before sentencing "[b]ecause I guess I suppose I really didn't need the income."  *Id.* at 41.  Christensen was shown a copy of the psycho-sexual evaluation, and he acknowledged that he may have told the evaluator that he quit his job because he was going to prison and wanted time for himself and his family.  *Id.* at 50.

Christensen's plea counsel also testified.  *Id.* at 57-86.  He said that he gave Christensen all the discovery prior to the preliminary hearing and told him to read it.  He testified with specificity that he explained to Christensen that the State had offered a deal of two counts of lewdness with a child under age fourteen, each of which carried a sentence of ten years to life, that they could be run concurrently or consecutively, what those words mean, and that probation was not available.  *Id.* at 62.  He also explained that if Christensen was convicted of the sexual assault charge, that charge carried a mandatory sentence of 35 to life.  Counsel testified that Christensen wanted to accept the plea offer though he was very upset that it was a mandatory prison case.  *Id.* at 65.  Counsel testified that, subsequent to Christensen deciding to accept the State's offer,

counsel received the guilty plea memorandum.  It erroneously stated that Christensen was eligible for probation.  Defense counsel could not recall who caught the error, but the memorandum was corrected, Christensen was presented only with the corrected version, and he read and signed the correct version, which was submitted to the court. *Id.* at 67-68.  Counsel said he put both versions in the file, and the first time Christensen saw the incorrect version was long after he pleaded guilty when the entire file was sent to him so that he could file a state postconviction petition.  Counsel stated that when he reviewed the arraignment transcript after sentencing, he saw that Christensen had indicated in response to the court's question that probation was available.  *Id.* at 72-75. Counsel did not recall that Christensen had told the court that he believed he was eligible for probation during the arraignment, but counsel brought the transcript to Christensen's attention.  He also testified that he gave a copy of the psycho-sexual evaluation to Christensen.  *Id.*

In its order dismissing the petition, the state district court laid out the uncontested facts: Christensen voluntarily gave a recorded statement to police confessing to the crimes to which he pleaded guilty; he signed a guilty plea memorandum that stated that he was not eligible for probation on either count; at the arraignment, when the court asked him is probation was available, Christensen answered affirmatively and no one corrected that inaccurate statement; and probation is not available under the statute to which Christensen pled guilty.  Exh. 70, pp. 2-3.

The court set forth the governing standard:  that it must "carefully consider the totality of the circumstances" in determining "whether a particular defendant actually understood the direct consequences of his plea."  *Little v. Warden*, 34 P.3d 540, 544 (Nev. 2001).  In considering whether the defendant was advised that probation was not available, the district court is not limited to the record of the plea canvass; rather the district court may look elsewhere in the record to determine whether the defendant understood that probation was not available in that particular case.  *Id.*

12

Applying *Little*, the court found that Christensen's statements clearly demonstrated that he knew he was ineligible for probation.  Exh. 70, p. 3.  The court found the following:  while Christensen testified that he had no recollection of any conversation with the reporting officer regarding his potential sentence, the PSI states: "During the PSI interview, the defendant expressed considerable remorse for his actions, and the damage he inflicted on her and his children, who will now have their father in prison."  *Id.* at 4-6.  The psycho-sexual evaluation stated that Christensen was upset that he was going to prison, was prepared to accept his anticipated prison sentence, hoped to be eligible for parole in the future, and quit his job because he knew he was going to prison and wanted time for himself and with his family.  *Id.*  A substance abuse counselor completed a memorandum that stated that Christensen told her that he was going to prison for a long time and faced 10 to life for his crime.  *Id.*

The state district court found Christensen's defense counsel's testimony—set forth above—to be credible.  *Id.* at 4-5.  The state district court concluded:

> Based upon the testimony of the Petitioner and his actions in terminating his employment prior to sentencing, the statements Petitioner made to Dr. Mahaffey and Ms. Fung contained in his Psychosexual Evaluation and Substance Abuse Evaluation, the statements made by Petitioner in the Presentence Report, the testimony of Mr. McGinnis about the number of times he advised Petitioner that probation was not available and the clear advisement of non-probationability contained in the guilty plea memorandum signed by the Petitioner, this court finds that, based upon the totality of the circumstances Petitioner possessed the requisite knowledge that probation was not available; instead, he was aware he was facing a lengthy prison sentence of at least "10 years to Life" as a consequence of his entry guilty pleas to the charges involving the victim in this case.

*Id.* at 6-7.

Christensen has not demonstrated that the Nevada Supreme Court's decision on federal ground 5 was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an

unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).  Accordingly, federal ground 5 is denied.

    The petition, therefore, is denied in its entirety.

    IV.    **Certificate of Appealability**

This is a final order adverse to the petitioner.  As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA).  Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA.  *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

    Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right."  With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct.  *Id.*

    Having reviewed its determinations and rulings in adjudicating Christensen's petition, the court finds that none of those rulings meets the *Slack* standard. The court therefore declines to issue a certificate of appealability for its resolution of any of Christensen's claims.

V.      **Conclusion**

**IT IS THEREFORE ORDERED** that the amended petition (ECF No. 9) is **DENIED** in its entirety.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment accordingly and close this case.

DATED: 30 March 2017.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE